# In the United States Court of Federal Claims

No. 05-262L
(Filed: March 29, 2006)
(Reissued: May 25, 2006)[1]

* * * * * * * * * * * * * * * * * * * * * *
FIREBAUGH CANAL WATER DISTRICT, *et al.*,

*Plaintiffs*,

v.

THE UNITED STATES,

*Defendant*.
* * * * * * * * * * * * * * * * * * * * * *

Tucker Act; Jurisdiction; 28 U.S.C. § 1500; "Pendency" requirement of Section 1500.

*Michael V. Sexton*, Oroville, CA, for plaintiffs.

*Kristine S. Tardiff*, General Litigation Section, Environmental and Natural Resources Division, United States Department of Justice, Concord, NH, with whom is *Kelly A. Johnson*, Acting Attorney General, Environmental and Natural Resources Division, United States Department of Justice, for defendant. *Jim Turner*, Office of the Regional Solicitor, United States Department of the Interior, Sacramento, CA and *Barbara Geigle*, Office of the Solicitor, United States Department of the Interior, Washington, D.C., of counsel.

## OPINION

[1]This opinion is being reissued to correct a typographical error on page six, line eleven of the first full paragraph. The published version of this opinion has been corrected, but will remain with its original issuance date.

BRUGGINK, *Judge*.

This is an action brought pursuant to the Tucker Act, 28 U.S.C. § 1491(a)(1) (2000). Plaintiffs, Firebaugh Canal Water District ("Firebaugh") and Central California Irrigation District ("CCID"), claim an entitlement under the takings clause of the Fifth Amendment to compensation for the taking of water rights. This is the second time plaintiffs have filed such a claim in this court. The first action was dismissed in 2005. *Firebaugh Canal Water Dist. v. United States*, No. 03-2790, slip op. (Fed. Cl. Jan. 31, 2005). Pending once again in this new proceeding is the government's motion to dismiss for lack of jurisdiction. The United States asserts that the action is barred, either because of the operation of 28 U.S.C. § 1500 (2000), or because it is untimely. The matter was transferred to this judge on October 20, 2005. Oral argument was held on December 9, 2005. Supplemental briefing on the Section 1500 issue was ordered at oral argument. All briefing is complete. For reasons set out below, we grant the government's motion to dismiss because of the operation of Section 1500.

BACKGROUND

Firebaugh and CCID filed the present complaint on February 28, 2005. Plaintiffs are public agencies which provide agricultural water and drainage service to thousands of acres of land in central California. Plaintiffs assert that their ownership of rights in water, along with related rights, have been taken because the asserted failure of the United States to meet its obligation to provide drainage from the San Luis Unit of the Central Valley Project caused pollution to plaintiffs' down-gradient interests.

The facts[2] leading to the present dispute arise out of the Central Valley Project ("CVP"), the nation's largest federal reclamation project. *Firebaugh Canal Co. v. United States*, 203 F.3d 568, 570 (9th Cir. 2000). In 1960, as part of the project, Congress passed the San Luis Act[3] ("SLA"). The SLA provided for construction of the San Luis Unit ("SLU") of the CVP, just up-gradient of land serviced by plaintiffs. The SLU, a combined effort of the State of

[2]These facts are drawn from the complaint, from the related Ninth Circuit case, *Firebaugh Canal Co. v. United States*, 203 F.3d 568, 570-73 (2000), and from the findings of the district court.

[3]Pub. L. No. 86-488, 74 Stat. 156 (1960).

California and the federal government, contains a complex system of dams, pumping and power plants, reservoirs, tunnels, and canals designed to provide irrigation water to several California counties. As the Ninth Circuit stated: "[i]rrigation and drainage are inherently linked. Any water project that brings fresh water to an agricultural area must take the salty water remaining after the crops have been irrigated away from the service area." *Id.* at 571. Accordingly, the SLA expressly conditioned construction of the SLU on the provision of drainage services. The drainage was to be provided by either the Department of the Interior, Bureau of Reclamation ("Bureau") or by the State of California. The Bureau planned to provide drainage by means of an interceptor drain which would carry the water to the Kesterson Regulating Reservoir. Construction of the SLU commenced and the largest water contractor within the SLU began receiving irrigation water in 1967.

By 1975, forty percent of the interceptor drain and the entire reservoir were complete, but construction ceased at that point. A subsurface drainage system was put in place for parts of the SLU. It discharged some of the wastewater from the SLU into the completed portion of the interceptor drain, which then took the wastewater to the reservoir.

In the mid-1980's studies of the reservoir wildlife showed deformity and mortality in waterfowl embryos. It was suspected that selenium from the SLU soil being carried to the reservoir was causing the damage. As a result, in 1985, the Bureau ordered that the reservoir be closed. The drains in the SLU were also closed, as was the completed portion of the interceptor drain. Irrigation continued, however, despite the fact that drainage had ceased. Plaintiffs allege damage that arises in various ways when additional wastewater flows down-gradient onto land in their districts, due to the lack of provision for drainage.

The present lawsuit is only one of several administrative or judicial proceedings plaintiffs have brought arising from these circumstances. The procedural history generated through these many actions is relevant to the present motion and is summarized below.

The first several claims were brought by plaintiffs before the Bureau. Each was styled a "Tucker Act Claim," and was based on the Bureau's 1985 order to close the Kesterson Reservoir and the San Luis Drain. Plaintiff CCID presented its claims on April 30, 1986 and February 2, 1988. Those claims were rejected in letters from the Bureau on October 30, 1986, and June 10,

1988. Plaintiff Firebaugh presented similarly-styled claims before the Bureau on both May 20, 1986, and December 9, 1987. Those claims were rejected on November 20, 1987, and June 10, 1988. Each agency separately presented a third letter to the Bureau on July 24, 1992. The Bureau never responded to either of the third letters.

After the Bureau's rejection, plaintiffs jointly filed civil action CV-F-88-634 in the United States District Court for the Eastern District of California on December 9, 1988 ("district court action"). It was assigned to Judge Oliver Wanger. The complaint alleged continuing negligence, continuing trespass, continuing nuisance, and violations of the Administrative Procedure Act[4] ("APA"). Plaintiffs sought monetary relief for each of the tort and APA claims and additionally sought injunctive relief for the alleged APA violation. Plaintiffs argued that the Bureau was in violation of the SLA by continuing to deliver irrigation water to the SLU, while not providing corresponding drainage.

The government moved to dismiss. The court converted this motion to one for summary judgment and on September 22, 1998, dismissed the three tort claims as well as those portions of the APA claim that sought monetary relief. On November 5, 1991, the claim for continuing nuisance was reinstated. Thus, the claims that remained at that time were the APA claim seeking injunctive relief and the continuing nuisance claim.

In the summer of 1991, Sumner Peck Ranch Inc., along with others, filed a complaint against the Bureau for the government's failure to provide drainage to the SLU. *Sumner Peck Ranch, Inc. v. Bureau of Reclamation*, civil action CV-F-91-048 (E.D. Cal. filed 1991). *Sumner Peck Ranch* was consolidated with the district court action for purposes of determining the duty that the SLA imposed on the government. During 1992, Firebaugh and CCID filed an additional complaint,[5] civil action CV-F-92-554. This case was also consolidated before Judge Wanger, along with the two earlier actions.

---

[4]Administrative Procedure Act of 1946, June 11, 1946, ch. 324, 60 Stat. 237 (codified as amended in scattered sections of 5 U.S.C.).

[5]In CV F-92-5554, plaintiffs alleged four causes of action: continuing nuisance; violation of the APA and two causes of action related to declaratory relief under the Federal Tort Claims Act, 28 U.S.C. § 2672 (2000).

On March 12, 1995, Judge Wanger issued a partial summary judgment in the consolidated cases. He held that the SLA imposed on the government a duty to provide drainage. The government appealed this issue to the Ninth Circuit.[6] Before the Ninth Circuit ruled, Firebaugh moved, in the district court action, to dismiss the entire case without prejudice. The district court granted this motion on April 27, 1999, with the exception of the issue of the duty imposed by the SLA, then still on appeal to the Ninth Circuit. Mem. Decision and Order Re: Defs' Mtn. to Dismiss [Pls]' "Third [Am.] Compl[.] and Demand for Jury Trial" at 5, District Court Action, CIV-F-91-048-OWW (filed May 7, 2003) ("Decision on Mtn. to Dismiss Plfs' Third Am. Compl."). On February 4, 2000, the Ninth Circuit remanded the case, affirming the holding of the district court that the government had a duty to provide drainage but holding that the Bureau has discretion to choose whether to provide such drainage by means of the interceptor drain or by some other means. 203 F.3d at 570.

As of the date of the remand, the district court had not entered final judgment, although it had dismissed the entire case with the exception of the portion on appeal. In response to the Ninth Circuit's holding, the district court issued an order modifying the previous order. Rather than being directed to complete the interceptor drain plan, the government was directed to submit a new plan for providing the required drainage. The government submitted a plan on April 18, 2001.

On February 10, 2003, plaintiffs filed their third amended district court complaint, realleging the initial tort claims of continuing negligence, continuing trespass, and continuing nuisance, as well as the APA claims. Plaintiffs also alleged for the first time claims of permanent trespass and inverse condemnation. On defendant's motion to dismiss, the district court dealt with the claims as follows: the continuing negligence and continuing trespass claims were dismissed, as they had already been dismissed with prejudice on September 22, 1989; the continuing nuisance and APA claims were allowed to remain because they had been previously dismissed without

[6]It is unclear from the record whether a partial final judgment was entered under Rule 54(b) or whether Judge Wanger certified an interlocutory appeal pursuant to section 28 U.S.C. § 1292(b). In view of subsequent amended complaints filed in the district court action, the distinction is not relevant.

prejudice; the permanent trespass claim was dismissed with prejudice on May 7, 2003; and the inverse condemnation claim was transferred to the Court of Federal Claims ("COFC") and assigned to Judge Sypolt on May 7, 2003. *See* Decision on Mtn. to Dismiss Plfs' Third Am. Compl. at 27.

Plaintiffs filed a complaint in the COFC on January 27, 2004, pursuant to Rule 3.1 of the Rules of the Court of Federal Claims ("RCFC"), which contemplates filing a new complaint in this court after a transfer from district court. This action was designated number 03-2790L. By relation back, the filing date for this action was February 10, 2003, the date the inverse condemnation claim was originally filed in district court. On January 31, 2005, Judge Sypolt dismissed the entire action for lack of jurisdiction because of the operation of Section 1500, which precludes suit in this court when an action previously filed elsewhere seeks similar relief based on the same underlying facts. *See Firebaugh, et al. v. United States*, No. 03-2790 (January 31, 2005, Sypolt, J.). The district court's dismissal of the tort claims not only lacked finality on the date the inverse condemnation claim was filed in the Court of Federal Claims, but the continuing nuisance claim had not yet been dismissed with prejudice. In sum, because tort claims remained pending in district court as of the filing date of the inverse condemnation claim, this court lacked jurisdiction.

On May 21, 2003, plaintiffs filed their fourth amended complaint in the consolidated district court action. This complaint realleged each of the following: continuing negligence, continuing and permanent trespass, continuing nuisance, and reasserted the APA violation claim. Defendant moved to dismiss. In an order dated May 12, 2004, the district court addressed the claims as follows: the continuing nuisance and continuing trespass claims were dismissed because they had been originally dismissed with prejudice on September 22, 1989; the permanent trespass claim was dismissed because it had originally been dismissed with prejudice on May 7, 2003; the continuing nuisance claim was dismissed with prejudice on May 12, 2004; and the APA violation claim remained as it had not previously been dismissed with prejudice. *See* Mem. Decision and Order on Defs' Mtn. to Dismiss at 66, District Court Action, CIV-F-91-048-OWW DLB (filed May 12, 2004).

On June 1, 2004, plaintiffs filed their fifth amended complaint before the district court. This complaint contained an amended continuing nuisance claim and reasserted the APA claim. On the government's motion, the district court dismissed the continuing nuisance claim as it had already dismissed that

claim with prejudice on May 12, 2004. The court did not dismiss the APA claim. *See* Mem. Decision and Order on Fed. Defs' Mtn. To Dismiss Pls' Fifth Am. Compl. at 42, District court action, CIV-F-91-048-OWW DLB (filed Nov. 19, 2004). The present action was filed on February 28, 2005. As of that date, no final judgment had been entered in the district court action.

DISCUSSION

Section 1500 provides, in relevant part, that "[t]he United States Court of Federal Claims shall not have jurisdiction of any claim for or in respect to which the plaintiff or his assignee has pending in any other court any suit or process against the United States." The determination of whether Section 1500 bars the present action is assessed as of the time of filing the COFC claim. *Keene Corp. v. United States*, 508 U.S. 200, 208-09 (1993); *see Minneapolis & St. Louis R.R. v. Peoria & Pekin Union R.R.*, 270 U.S. 580, 586 (1926); *Mullen v. Torrance*, 22 U.S. 537, 539 (1824).[7] The relevant date here is February 28, 2005, when plaintiffs filed the present complaint.

Section 1500 contains two requirements: first, that the instant claim be the "same claim" as one previously filed, and, second, that the previously filed claim be "pending" at the time the instant claim is filed. 28 U.S.C. § 1500. While the term "claim" is not statutorily defined, the Federal Circuit has adopted a working definition: "the claim pending in another court must arise from *the same operative facts*, and must seek *the same relief*." *Loveladies Harbor, Inc. v. United States*, 27 F.3d 1545, 1551 (Fed. Cir. 1994).

It is undisputable that the complaint as amended in the district court and the complaint here share allegations. Both the tort claims alleged in the district court action and the inverse condemnation claim alleged here arose from the government's failure to provide drainage to the SLU. Both allege that a breach of the SLA-imposed duty to provide drainage to the SLU resulted in down-gradient contamination. Both seek money damages. The present action is therefore the "same claim" as the tort claims brought in the district court. *See Nat'l Union Fire Ins. Co. v. United States*, 19 Cl. Ct. 188 (1989).

---

[7]Pendency "constitutes a permanent defect that is not cured if these claims cease to be pending prior to the time a motion under Section 1500 is entertained by this court." *Young v. United States*, 60 Fed. Cl. 418, 422 (2004) (citing *Keene Corp.*, 508 U.S. at 207-09).

The pendency issue is more difficult. The unique question presented here is whether the Section 1500 bar is effective when a parallel tort claim merely has been dismissed but has not been the subject of a final judgment at the time the COFC claim was filed. In its motion to dismiss, defendant argues that, although the tort claims were dismissed with prejudice on various dates between 1989 and 2004 by the district court, as of February 28, 2005, they were still pending for purposes of Section 1500 because no final judgment had yet been entered.

In *UNR Industries, Inc. v. United States*, the Federal Circuit reviewed the legislative history and judicial development of Section 1500. 962 F.2d 1013 (Fed. Cir. 1992). With respect to pendency, the court noted that when the similar claim has already been "finally disposed of by another court before the complaint is filed in the [COFC], ordinary rules of *res judicata* and available defenses apply." *Id.* at 1021. Its reasoning suggests that Section 1500 bars jurisdiction when *res judicata* does not apply, i.e., when there is not yet a final judgment. Subsequent decisions suggest that a claim is not pending after final judgment has been entered, but that it becomes pending once again when a notice of appeal is filed. *See Wilson v. United States*, 32 Fed. Cl. 794 (1995); *Hulsey v. United States*, 28 Fed. Cl. 75 (1993).

With respect to whether the district court action is still pending, defendant points to Rule 54(b) of the Federal Rules of Civil Procedure ("FRCP" or "Rule"), the applicable rule in the district court, which states:

> Judgment Upon Multiple Claims or Involving Multiple Parties. When more than one claim for relief is presented in an action, . . . . any order or other form of decision, however designated, which adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties shall not terminate the action as to any of the claims or parties, and the order or other form of decision *is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties.*

(emphasis added). It is undisputed that no final judgment had been entered at the time the present case was filed, nor was an interim appeal certified under 28 U.S.C. § 1292(b). Defendant thus asserts that Judge Wanger had, and still has, the ability to modify his orders of dismissal. Because the claims were

subject to revision, defendant argues, they were still pending for purposes of Section 1500.

In their supplemental brief,[8] plaintiffs concede that Judge Wanger retained the power to reinstate the dismissed tort claims at the time the present case was filed: "[t]he [d]istrict [c]ourt does retain the power to modify any interlocutory order and reinstate the State law tort claims." Pl. Supp. Br. at 2. In their view, however, once a claim is dismissed, and reinstatement is not sought, that claim is no longer pending for purposes of Section 1500. In support of that statement, plaintiffs cite to *Young v. United States*, 60 Fed. Cl. 418, 422 (2004) ("*Young II*").

In *Young II*, *pro se* plaintiffs sued the United States on a breach of contract theory. *Young II*, 60 Fed. Cl. at 420. They had previously filed two cases: one against the Department of Housing and Urban development ("HUD") and other defendants in district court, and another against the United States in this court ("*Young I*"). *Id.* at 420-21. The district court action was filed first. HUD was then dismissed as a party to that action, but no final judgment was entered as to that dismissal. Plaintiffs appealed the dismissal of HUD to the Eighth Circuit. The Eighth Circuit dismissed the appeal on September 4, 2001, because the district court's dismissal order was not final and appealable. *Young II*, 60 Fed. Cl. at 421-22. Plaintiffs then filed a motion in the district court to reinstate HUD as a defendant. That motion was denied. The district court action was thereafter dismissed. Shortly before it was dismissed, however, *Young I* was filed here. Plaintiffs later appealed the decision dismissing the district court action and then filed *Young II*. *Young I* was dismissed shortly thereafter. *Id.* at 420.

We began consideration of defendant's Section 1500 motion in *Young II* by noting a procedural irregularity– *Young I* had not been dismissed before *Young II* was filed. Because the plaintiffs were *pro se*, Judge Wolski chose to

---

[8]A portion of plaintiffs' argument addressed a scenario in which the district court judge reinstated the tort law claims after the present case was filed. In doing so plaintiffs assumed away the issue of pendency, stating that they would "analyze this particular question as if the dismissed tort claims are not pending prior to reinstatement by the [d]istrict [c]ourt." Pl. Supp. Br. at 3 n.1. The assumption makes plaintiff's subsequent argument irrelevant. Pendency is precisely what is at issue.

treat the filing of *Young II* as an amendment to the as-yet-undismissed *Young I*. The issue before Judge Wolski then became whether Section 1500 prohibited this court from taking jurisdiction of *Young I* at the time it was filed, due to the pendency of the district court action. Judge Wolski denied the motion to dismiss. He concluded that because every claim against HUD had been dismissed at the time *Young I* was filed, there were no claims pending at that time for Section 1500 purposes. Judge Wolski added: "once a claim is dismissed or denied, it is no longer pending in another court until a motion for reconsideration or notice of appeal is filed." *Young II*, 60 Fed. Cl. at 425.

Our reading of *Young II* as reflected in the COFC decision and an unpublished Eighth Circuit opinion on the later appeal of the final district court judgment, *Young v. United States Dep't of Hous. and Urban Dev.*, 78 Fed. Appx. 553 (8th Cir. 2003), suggests that on July 8, 2002, the district court still had jurisdiction of the claims against HUD. Although it is correct that HUD had been dismissed on July 2, 2001, that dismissal was not the subject of a partial final judgment. The district court rejected a request to make the dismissal of HUD final and appealable by issuing a partial final judgment under Rule 54(b). *Young II*, 60 Fed. Cl. at 422. It is unclear whether the district court certified an interlocutory appeal under section 1292(b). While the claims against HUD were on appeal, assuming that such appeal was taken in a proper procedural matter, the Eighth Circuit had jurisdiction for the brief time that it considered the appeal. In its dismissal, the Eighth Circuit neither affirmed nor denied the district court's dismissal. As a result, the district court would have had the power to revise or modify the order dismissing HUD. At no time until final judgment did the district court action cease to be pending, either in the district court or the Eighth Circuit. The district court retained jurisdiction subsequent to the interlocutory dismissal of HUD, with the exception of the time during which the Eighth Circuit considered appeal of the dismissal. Once the Eighth Circuit dismissed the appeal, the district court once again regained jurisdiction. The claim against HUD would thus appear still to have been pending in the district court until it was the subject of a final judgment on August 5, 2002.

In view of the fact that the court denied the motion to dismiss, it could only be because in the view of the court, the dismissal of HUD, combined with the Eighth Circuit's dismissal of the interlocutory appeal, meant that the claim against HUD was no longer pending. To the extent that *Young II* treats as controlling either the district court's interlocutory dismissal or the Eighth Circuit dismissal of the interlocutory appeal, we respectfully disagree.

Dismissal of the interlocutory appeal left the district court in the same position it was in before the interlocutory appeal– it retained jurisdiction of HUD as a defendant. Although plaintiff sought appellate review, that appeal was later dismissed. We therefore decline to follow *Young II*.

In sum, Judge Wanger neither entered a partial judgment under Rule 54(b) nor did he certify an interlocutory appeal. He therefore retained and still retains the power to modify the dismissals until a final judgment is entered. It follows that the tort damage claims were still pending at the district court as of February 28, 2005.

We conclude that this court has no jurisdiction over the present action due to the tort law claims still pending in the district court at the time this action commenced. The lack of jurisdiction under Section 1500 is a sufficient basis to grant the government's motion to dismiss. We decline, for that reason, to address other grounds for dismissal.

## CONCLUSION

For the reasons set out above, defendant's motion to dismiss is granted. The Clerk is directed to dismiss the complaint for lack of jurisdiction. No costs.

s/Eric G. Bruggink
ERIC G. BRUGGINK
Judge